UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EDI PARADA ORELLANA,

    *Plaintiff*,

  v.

HANN'S HARVARD, INC., *et al.*,

    *Defendants*.

Civil Action No. 25 - 1094 (LLA)

**MEMORANDUM OPINION**

    Plaintiff Edi Parada Orellana brings this action against his former employer, Defendant Hann's Harvard, Inc., and former boss, Defendant Doung Kyu Han, for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the District of Columbia Minimum Wage Act Revision Act ("DCMWA"), D.C. Code § 32-1001 *et seq.*, and the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301 *et seq.* Mr. Parada Orellana has moved for default judgment under Federal Rule of Civil Procedure 55. ECF No. 11. The court conducted a hearing on the motion, Jan. 22, 2026 Minute Entry, and Mr. Parada Orellana thereafter filed additional evidence substantiating his damages claim, ECF No. 12. For the following reasons, the court will grant the motion in part and deny it in part.

    **I.**    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    For purposes of a motion for default judgment, the court accepts the plaintiff's well-pleaded allegations as true. *Kwok Sze v. Johnson*, 172 F. Supp. 3d 112, 115 (D.D.C. 2016). The court accordingly draws the following facts from Mr. Parada Orellana's complaint, ECF No. 1, motion for default judgment, ECF No. 11, supplemental notice concerning damages, ECF

No. 12, and testimony from the evidentiary hearing, Tr. of Jan. 22, 2026 Mot. Hr'g ("Hr'g Tr."). *See Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 134-35 (D.D.C. 2011); *Crescent Petrol. Co. Int'l v. Nat'l Iranian Oil Co.*, No. 22-CV-1361, 2024 WL 1885498, at *1 (D.D.C. Apr. 30, 2024).

Mr. Parada Orellana worked as a cashier at Defendant Hann's Harvard, Inc. ("Harvard Liquor Store") from approximately October 9, 2023 until November 24, 2024. ECF No. 1 ¶¶ 9-10. Defendant Han, the store's owner, would set and communicate Mr. Parada Orellana's hours by posting a handwritten schedule inside the liquor store. *Id.* ¶¶ 7-8, 17; ECF No. 11-2 ¶¶ 7-8; Hr'g Tr. at 7:17-7:20, 10:13-10:15, 11:8-11:11. From October 9, 2023 until May 5, 2024, Mr. Parada Orellana typically worked the following schedule of eighty-seven hours per week:

- Monday: 11:00 a.m. to 1:00 a.m. the next day, with a break from 2:00 p.m. to 6:00 p.m., for a total of ten hours. ECF No. 1 ¶ 16; Hr'g. Tr. at 8:23-9:02, 10:06-10:12.

- Tuesday: 10:00 a.m. to 1:00 a.m. the next day, with a break from 2:00 p.m. to 4:00 p.m., for a total of thirteen hours. ECF No. 1 ¶ 16; Hr'g Tr. at 9:03-9:06, 10:06-10:12.

- Wednesday: 11:00 a.m. to 1:00 a.m. the next day, with a break from 2:00 p.m. to 4:00 p.m., for a total of twelve hours. ECF No. 1 ¶ 16; Hr'g Tr. at 9:08-9:12, 10:06-10:12.

- Thursday: 11:00 a.m. to 1:00 a.m. the next day, with a break from 2:00 p.m. to 4:00 p.m., for a total of twelve hours. ECF No. 1 ¶ 16; Hr'g Tr. at 9:13-9:16, 10:06-10:12.

- Friday: 10:00 a.m. to 1:00 a.m. the next day, with no break, for a total of fifteen hours. ECF No. 1 ¶ 16; Hr'g Tr. at 9:17-9:22, 10:06-10:12.

- Saturday: 10:00 a.m. to 1:00 a.m. the next day, with a break from 1:00 p.m. to 2:00 p.m., for a total of fourteen hours. ECF No. 1 ¶ 16; Hr'g Tr. at 9:23-10:02, 10:06-10:12.

- Sunday: 2:00 p.m. to 1:00 a.m. the next day, with no break, for a total of eleven hours. ECF No. 1 ¶ 16; Hr'g Tr. at 10:03-10:05, 10:06-10:12.[1]

Except for the period between February 12, 2024 and March 3, 2024—when Defendants did not pay Mr. Parada Orellana for his work, *see* ECF No. 11-2 ¶ 13—Defendants paid Mr. Parada Orellana $1,200 per week during this time, amounting to an hourly wage of $13.79, ECF No. 1 ¶ 18; Hr'g Tr. at 13:14-13:16. At the time, the District's minimum wage was $17.00 per hour and overtime rate was $25.50 per hour for every hour "in excess of [forty] hours." D.C. Code § 32-1003(c); *Public Notice: District of Columbia Minimum Wage Increase*, D.C. Dep't of Empl. Servs. Off. of Wage & Hour (2023) ("2023 *Public Notice*");[2] ECF No. 1 ¶ 59.

From approximately May 6, 2024 until September 1, 2024, Mr. Parada Orellana worked a reduced schedule due to illness. He often worked two days per week for a weekly total of about twenty-five hours, ECF No. 1 ¶¶ 13, 15; Hr'g Tr. at 14:01-14:04, 17:03-17:14; ECF No. 12-1, at 12-15; *see also* ECF No. 12-1, at 17 (suggesting that Mr. Parada Orellana potentially worked

---

[1] Following the evidentiary hearing, Mr. Parada Orellana supplemented his motion for default judgment with more handwritten schedules provided by Mr. Han. ECF No. 12. These schedules showed that Mr. Parada Orellana worked the following hours: (1) eighty-and-a-half hours during what appears to be the week beginning November 27, 2023, ECF No. 12-1, at 1; (2) eighty-seven hours during the week beginning December 4, 2023, *id.* at 3; *see* ECF No. 1 ¶ 17; (3) approximately eighty-seven hours during the week beginning December 11, 2023, assuming that he ended his Monday shift at 1:00 a.m., as he did on other days, ECF No. 12-1, at 5; (4) either seventy-four or eighty-six hours during the week beginning January 1, 2024, depending on whether he worked on Sunday, which is unclear on the schedule, *compare id.* at 6, *with id.* at 7; (5) eighty-nine hours during the week beginning January 15, 2024, *id.* at 8; (6) and either eighty-seven or ninety-four hours during the week beginning January 22, 2024, depending on his Wednesday schedule, which is unclear, *id.* at 9. At least one handwritten schedule does not clearly state the pay period. ECF No. 12-1, at 10-11 (indicating that Mr. Parada Orellana worked sixty-three hours that week). On average, Mr. Parada Orellana's supplemental evidence indicates that between October 9, 2023 and May 5, 2024, he worked close to his "typical" eighty-seven-hour schedule. ECF No. 11-2 ¶ 8.

[2] *Available at* https://perma.cc/XLL8-Y99H.

3

less than twenty-five hours, but the schedule is unclear).[3]  Defendants paid him $16.00 per hour from May 6, 2024 through August 4, 2024—less than the District's minimum wage, which increased from $17.00 to $17.50 per hour on July 1, 2024.  ECF No. 1 ¶¶ 20-22, 59; *Public Notice: District of Columbia Minimum Wage Increase*, D.C. Dep't of Empl. Servs. Off. of Wage & Hour (2024) ("2024 *Public Notice*").[4]  From August 5, 2024 through August 25, 2024, Defendants did not pay Mr. Parada Orellana any wages for his work, ECF No. 11-2 ¶ 13, but they resumed paying him $16.00 per hour beginning on August 26, 2024, *see id.* ¶ 10; ECF No. 11-3, at 2.

From approximately September 2, 2024 until November 24, 2024, Mr. Parada Orellana returned to a full-time schedule.  *See* ECF No. 1 ¶ 14; ECF No. 11-2 ¶¶ 6, 8; Hr'g Tr. at 12:15-12:22; ECF No. 12-1, at 18-26.  Mr. Han's handwritten work schedules show that Mr. Parada Orellana worked the following hours: (1) approximately fifty-eight hours during the week beginning September 2, 2024, although his Friday hours are unclear, ECF No. 12-1, at 18; (2) sixty-three-and-a-half hours during the week beginning September 9, 2024, *id.* at 19; (3) approximately sixty-one-and-a-half hours during the week beginning September 16, 2024, although his Saturday hours are unclear, *id.* at 20; (4) approximately sixty hours during the week beginning September 30, 2024, although his Friday hours are unclear, *id.* at 21; (5) approximately sixty-five-and-a-half hours during the week beginning October 7, 2024, although his Saturday hours are unclear, *id.* at 22; (6) approximately sixty-four-and-a-half hours during the week beginning October 21, 2024, although his weekend hours are unclear, *id.* at 23; (7) approximately

---

[3] In his declaration, Mr. Parada Orellana indicated that he returned to his eighty-seven-hour schedule on August 5, 2024, ECF No. 11-2 ¶ 6, but the supplemental evidence indicates that he continued working a reduced twenty-five-hour schedule for the weeks beginning August 5 and August 12, 2024, *see* ECF No. 12-1, at 12, 14-15.  Given Defendants' shoddy recordkeeping, Mr. Parada Orellana's mistake is understandable.

[4] *Available at* https://perma.cc/Y26V-5JEY.

seventy-one-and-a-half hours during the week beginning October 28, 2024, although his weekend hours are unclear, *id.* at 24; (8) fifty-seven hours during the week beginning November 4, 2024, *id.* at 25; and (9) thirty-and-a-half hours during the week beginning November 18, 2024, *id.* at 26. During the remaining weeks, Mr. Parada Orellana worked his typical eighty-seven-hour schedule. ECF No. 1 ¶ 14; ECF No. 11-2 ¶¶ 6, 8; Hr'g Tr. at 12:15-12:22. Defendants paid Mr. Parada Orellana $16.00 per hour during this period. ECF No. 11-2 ¶ 10; ECF No. 11-3, at 2; Hr'g Tr. at 13:19-13:25.

In addition to not paying minimum regular or overtime wages, Defendants did not compensate Mr. Parada Orellana for working "split shifts." ECF No. 1 ¶¶ 26-27; ECF No. 11-2 ¶ 12. According to District regulations, a "split shift" occurs when an employee works non-consecutive hours in a given workday and his break exceeds a permissible one-hour break for meals. 7 DCMR §§ 906.1, 999.2; *see Wage and Hour Laws*, Off. of the Att'y Gen. for D.C.[5] The employer must pay the employee "one additional hour at the minimum wage for each day [he] works a split shift." 7 DCMR § 906.1.

Mr. Parada Orellana filed this action in April 2025, alleging that Defendants had violated the FLSA, DCMWA, and DCWPCL. ECF No. 1. He sought $160,030 in unpaid wages, liquidated damages, pre- and post-judgment interest, attorney's fees and expenses, and court costs. *Id.* at 9-10. The Clerk of Court issued summonses the same day, ECF No. 2, and Mr. Parada Orellana effected service on both Defendants, ECF Nos. 3, 4. After Defendants failed to file a response, Mr. Parada Orellana moved for entry of default, ECF Nos. 5 to 7, and the Clerk entered defaults against Defendants, ECF Nos. 8, 9. In August 2025, Mr. Parada Orellana filed a motion for default

---

[5] *Available at* https://perma.cc/C25M-VPWE.

judgment. ECF No. 11. The court then conducted an evidentiary hearing pursuant to Federal Rule of Civil Procedure 55(b)(2), which permits the court to hold a hearing on a default judgment motion to "determine the amount of damages," "establish the truth of any allegation by evidence," or "investigate any other matter." *See* Dec. 23, 2025 Minute Order; Jan. 22, 2026 Minute Entry. Following the hearing, Mr. Parada Orellana filed a notice containing additional pictures of handwritten schedules from Mr. Han. ECF No. 12.

## II.     LEGAL STANDARD

"[T]he Federal Rules of Civil Procedure provide for default judgments . . . [to] safeguard plaintiffs 'when the adversary process has been halted because of an essentially unresponsive party,'" and to protect "'the diligent party . . . lest he be faced with interminable delay and continued uncertainty as to his rights.'" *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). A court may therefore "enter default judgment [under Federal Rule of Civil Procedure 55(b)(2)] when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics." *Peak v. District of Columbia*, 236 F.R.D. 13, 15 (D.D.C. 2006). Default judgment is appropriate only when the defendant is "a totally unresponsive party and its default [is] plainly willful, reflected by its failure to respond to the summons and complaint, the entry of default, or the motion for default judgment." *Edwards v. Charles Schwab Corp.*, No. 19-CV-3614, 2022 WL 839636, at *1 (D.D.C. Feb. 14, 2022) (internal quotation marks omitted) (quoting *Flynn v. JMP Restoration Corp.*, No. 10-CV-102, 2010 WL 1687950, at *1 (D.D.C. Apr. 23, 2010)).

A plaintiff must complete two steps to obtain a default judgment. *See* Fed. R. Civ. P. 55. First, he must ask the Clerk of Court to enter default based on the defendant's failure "to plead or otherwise defend" itself in response to the complaint. *Id.* R. 55(a). Second, after the Clerk has

6

entered default, he must file a motion for default judgment and provide notice of the same to the defaulting party. *Id.* R. 55(b)(2). Once a plaintiff has satisfied both procedural steps, "[t]he determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008).

A "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Robinson v. Ergo Sols., LLC*, 4 F. Supp. 3d 171, 178 (D.D.C. 2014) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002)). However, "the defendant's default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief." *Denson v. DC Rest. Holdings, Inc.*, No. 19-CV-1609, 2021 WL 4988994, at *1 (D.D.C. Oct. 27, 2021) (quoting *Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 27 (D.D.C. 2008)). "Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain." *R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30. In ruling on a motion for default judgment, "the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Id.* Further, a plaintiff "must prove [his] damages to a reasonable certainty." *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 68 (D.D.C. 2011). And, when information concerning damages is within the defendant's care, custody, or control, a plaintiff's "estimation" will suffice if it is "as both reasonable and as accurate as possible under the circumstances." *Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 162 (D.D.C. 2009) (relying on the plaintiffs' estimations of the defendant's delinquent contributions to an employee benefit plan "[i]n light of the defendant's failure to provide periodic reports or allow the plaintiffs access to the defendant's books and records").

### III.     DISCUSSION

The court begins by assessing whether Mr. Parada Orellana has satisfied the procedural requirements for a default judgment. It then considers whether he has stated a claim for relief under the FLSA, DCMWA, and DCWPCL, and determines the appropriate remedy.

#### A.     Service and Default

Default judgment can only be entered against a party that has defaulted on its obligation to respond to the complaint. *See Peak*, 236 F.R.D. at 15-16. The obligation to respond is triggered by proper service of process. *See* Fed. R. Civ. P. 12(a)(1)(A). Thus, "[a] default 'cannot be entered where there was insufficient service of process.'" *Radiant Glob. Logistics, Inc. v. Am. Indep. Distillery Coop.*, No. 20-CV-3239, 2021 WL 5416633, at *3 (D.D.C. Nov. 19, 2021) (quoting *Scott v. District of Columbia*, 598 F. Supp. 2d 30, 36 (D.D.C. 2009)). Mr. Parada Orellana has the burden of proving that service was proper. *See Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012); *Myeress v. ProAm Dance Team NYC LLC*, No. 18-CV-109, 2019 WL 1011336, at *3 (D.D.C. Mar. 4, 2019).

Mr. Parada Orellana has met his burden of proving proper service. A plaintiff may serve a corporation like Harvard Liquor Store "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1). According to the District of Columbia's Department of Licensing and Consumer Protection, the registered agent for Harvard Liquor Store is Ace Corporate Services, Inc., which is located at 250 11th Street, NE, Washington, D.C. 20002.[6]

---

[6] *Available at* https://corponline.dlcp.dc.gov/Home.aspx/Landing (create account, sign in, and search for "Hann's Harvard").

And, a plaintiff may serve an individual like Mr. Han by "delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e)(2). Service of process must be effected by someone "who is at least 18 years old and not a party" to the action. *Id.* R. 4(c)(1).

Mr. Parada Orellana's process server personally served Mr. Han on April 14, 2025, and served Havard Liquor Store's registered agent on April 15, 2025. ECF Nos. 3, 4. Pursuant to Federal Rule of Civil Procedure Rule 12(a)(1), Defendants' responses to the complaint were due on May 5 and May 6, 2025, respectively. *See* Apr. 16, 2025 Docket Entries. Because neither Defendant responded to the complaint with twenty-one days of service, Mr. Parada Orellana filed affidavits of default, ECF Nos. 5 to 7, and the Clerk of Court entered defaults against them on May 9, 2025, ECF Nos. 8, 9. Neither Defendant has responded to the motion for default judgment or otherwise entered an appearance in this case. The court thus finds that Defendants have been "'totally unresponsive'" and "willful[ly]" in default, *Edwards*, 2022 WL 839636, at *1 (quoting *Flynn*, 2010 WL 1687950, at *1), and it will turn to their liability under the FLSA, DCMWA, and DCWPCL.

### B.    Liability

The FLSA mandates that "[e]very employer . . . pay to each of his employees" wages that are no less than the federal minimum wage of $7.25 per hour, 29 U.S.C. § 206, and compensate employees for any hours worked in excess of forty hours per week "at a rate not less than one and one-half times the regular rate at which [the employee] is employed," *id.* § 207(a)(1). The DCMWA requires that employers in the District of Columbia pay their employees a minimum wage, which was $17.00 per hour when Mr. Parada Orellana started at Harvard Liquor Store and $17.50 per hour beginning on July 1, 2024. D.C. Code § 32-1003(a)-(b); *see* 2024 *Public Notice*, *supra*. The DCMWA further requires employers to compensate any employee who works "in

9

excess of [forty] hours [in a week] at a rate not less than [one and one-half] times the regular rate at which the employee is employed." D.C. Code § 32-1003(c).  Under the DCWPCL, employers must pay their employees on "regular paydays designated in advance by the employer and at least twice during each calendar month." *Id.* § 32-1302.  Additionally, as noted, District regulations require employers to pay employees for "one additional hour at the minimum wage for each day . . . the employee works a split shift." 7 DCMR § 906.1; *see id.* § 999.2.

An "employer" under the FLSA is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  The term "person" includes a corporation. *Id.* § 203(a).  The FLSA's definition of "employer" "is necessarily a broad one in accordance with the remedial purpose of the Act." *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 10 (D.C. Cir. 2001) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058 (2d Cir. 1988)).  The DCMWA's definition of "employer" is virtually identical to the FLSA's. *See* D.C. Code § 32-1002(3).  The DCWPCL defines "employer" (with some additions and exceptions not relevant here) as any individual or corporation "employing any person in the District of Columbia." *Id.* § 32-1301(1B).  "[C]ourts in this district have consistently concluded that determinations of employer or employee status under the FLSA apply equally under the District of Columbia wage laws." *Wright v. Off. of Wage Hour*, 301 A.3d 660, 684 (D.C. 2023) (alteration in original) (internal quotation marks omitted) (quoting *Bonilla v. Power Design Inc.*, 201 F. Supp. 3d 60, 63 (D.D.C. 2016)); *see Guevara v. Ischia, Inc.*, 47 F. Supp. 3d 23, 26 (D.D.C. 2014).

The court concludes that Mr. Parada Orellana's well-pleaded allegations establish that Defendants Harvard Liquor Store and Mr. Han were his employers and that both Defendants violated the FLSA, DCMWA, DCWPCL, and District regulations.  First, Defendants employed Mr. Parada Orellana.  Harvard Liquor Store was plainly "acting directly or indirectly in the interest

of an employer in relation to an employee" under the FLSA, 29 U.S.C. § 203(d), and the DCMWA, D.C. Code § 32-1002(3). Additionally, from October 2023 through November 2024, it was a corporation "employing a[] person in the District of Columbia" under the DCWPCL. D.C. Code § 32-1301(1B).

The court also concludes that Mr. Han is an "employer" under the FLSA, DCMWA, and DCWPCL. *See Herrera v. Mitch O'Hara LLC*, 257 F. Supp. 3d 37, 43 (D.D.C. 2017) (explaining that an individual can be held liable where he qualifies as an "employer" under the relevant statute). To determine whether an individual is an "employer" under these statutes, courts apply the "economic reality" test. *See Morrison*, 253 F.3d at 11; *Steinke v. P5 Sols., Inc.*, 282 A.3d 1076, 1084-85 (D.C. 2022). That test considers "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Morrison*, 253 F.3d at 11 (quoting *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994)). Importantly, "[n]o one factor standing alone is dispositive and courts are directed to look at the totality of the circumstances and consider any relevant evidence." *Id.*

As Mr. Han has conceded by failing to appear in this litigation, he generally "set the hours of operation for Harvard Liquor Store," ECF No. 1 ¶ 31, and "hired and fired" the store's employees, *id.* ¶ 32. With respect to this case, Mr. Han hired Mr. Parada Orellana, set his work schedule, controlled his rate and manner of pay, and supervised and paid him. *Id.* ¶¶ 33-38; Hr'g Tr. at 12:23-12:24. Based on these allegations, Mr. Han meets each criterion of the economic reality test and is therefore an employer under the FLSA, DCMWA, and DCWPCL. *See Morrison*, 253 F.3d at 11; *Herrera*, 257 F. Supp. 3d at 44 (finding that an individual was an employer under the FLSA and DCWPCL based on similar allegations).

Second, Mr. Parada Orellana's well-pleaded allegations establish that Defendants Harvard Liquor Store and Mr. Han are liable for violating the FLSA, DCMWA, and DCWPCL. Mr. Parada Orellana has plausibly alleged that Defendants committed various wage-law violations by (1) paying him $1,200 per week from October 9, 2023 through May 5, 2024, which was lower than the minimum wage, ECF No. 1 ¶ 18; ECF No. 11, at 3; ECF No. 11-2 ¶ 9; (2) failing to pay him altogether from February 12, 2024 through March 3, 2024 and from August 5, 2024 through August 25, 2024, ECF No. 11, at 3; ECF No. 11-2 ¶ 13; (3) paying him $16.00 per hour from May 6, 2024 through November 24, 2024, which was lower than the minimum wage, ECF No. 1 ¶¶ 19-21; ECF No. 11, at 3; ECF No. 11-2 ¶ 10; (4) failing to pay him overtime when he worked more than forty hours per week, ECF No. 1 ¶ 23; ECF No. 11, at 3; ECF No. 11-2 ¶ 11; and (5) failing to compensate him under 7 DCMR § 906.1 when he worked split shifts, ECF No. 1 ¶¶ 24, 26-27; ECF No. 11, at 3; ECF No. 11-2 ¶ 12. These allegations sufficiently state claims under the FLSA, DCMWA, and DCWPCL. Accordingly, the court concludes that Defendants Harvard Liquor Store and Mr. Han are jointly and severally liable for violations of the FLSA, DCMWA, and DCWPCL.

### C.  Damages

After finding Defendants liable, the court must make an independent determination of the appropriate sum for a default judgment based on affidavits and other supporting documentation. *R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30.

#### 1.  Unpaid wages and liquidated damages

Mr. Parada Orellana was employed by Defendants from October 9, 2023 through November 24, 2024. ECF No. 1 ¶ 9; ECF No. 11-2 ¶ 4. He alleges that Defendants paid him

below the minimum wage—first a weekly salary that effectively yielded a $13.79 hourly rate and, beginning in May 2024, $16.00 per hour.  ECF No. 1 ¶¶ 18-22; ECF No. 11-2 ¶¶ 9-10.  He also asserts that Defendants did not pay him overtime wages or compensate him for split shifts that he worked.  ECF No. 1 ¶¶ 21-24, 26-27; ECF No. 11-2 ¶¶ 11-12.  Finally, Defendants did not pay Mr. Parada Orellana anything for three pay periods beginning in February 2024 and three in August 2024.  ECF No. 11-2 ¶ 13.

Mr. Parada Orellana's affidavit, testimony, and supporting documentation establish that he generally worked eighty-seven-hour weeks from October 9, 2023 through May 5, 2024.  ECF No. 11-2 ¶¶ 6-8; Hr'g. Tr. at 8:23 9:02, 10:06 10:12.  During this period, Mr. Parada Orellana completed four split shifts per week and was paid $1,200 weekly, ECF No. 11-2 ¶¶ 7-9, except for the pay periods beginning on February 12, 2024 and ending on March 3, 2024, when Defendants failed to pay him, *id.* ¶ 13.  From May 6, 2024 through September 1, 2024, he worked twenty-five hours per week, often without any split shifts.  *Id.* ¶ 6; ECF No. 12-1, at 15-17.  Defendants began paying Mr. Parada Orellana $16.00 per hour on May 6, 2024—and continued to do so after July 1, 2024, when the District raised the minimum wage from $17.00 to $17.50.  ECF No. 11-2 ¶ 10; *see* 2024 *Public Notice*, *supra*.  From August 5, 2024 until August 25, 2024, Defendants did not pay Mr. Parada Orellana for his work.  ECF No. 11-2 ¶ 13.  And, from September 2, 2024 until November 24, 2024, Mr. Parada Orellana worked eighty-seven-hour weeks again—although his hours sometimes varied—with four split shifts per week, for which Defendants paid him $16.00 per hour.  *Id.* ¶¶ 6-8; ECF No. 12-1, at 18-27.

In addition to unpaid minimum and overtime wages and split-shift compensation, Mr. Parada Orellana is entitled to liquidated damages equaling three times the amount of unpaid wages.   D.C. Code  §§ 32-1012(b)(1),  32-1308(a)(1)(A)(ii).   To account  for changes  to

13

Mr. Parada Orellana's work schedule, variations in whether and how much Defendants paid him, and the District's minimum wage increase, the court will address unpaid wages and liquidated damages for the following six pay periods:[7] (1) October 9, 2023 through February 11, 2024 and March 4, 2024 through May 5, 2024 ("Table 1"), which reflects Mr. Parada Orellana's full-time eighty-seven-hour schedule, four split shifts per week, and $1,200 weekly salary; (2) February 12, 2024 through March 3, 2024 ("Table 2"), which reflects his full-time schedule and four split shifts per week when Defendants did not pay him; (3) May 6, 2024 through June 30, 2024 ("Table 3"), which reflects his reduced schedule, no split shifts, and a $16.00 hourly wage when the District's minimum wage was $17.00 per hour; (4) July 1, 2024 through August 4, 2024 and August 26, 2024 through September 1, 2024 ("Table 4"), which reflects his reduced schedule, no split shifts, and a $16.00 hourly wage after the District increased its minimum wage to $17.50; (5) August 5, 2024 through August 25, 2024 ("Table 5"), which reflects his reduced schedule, approximately two split shifts,[8] and Defendants' failure to pay him any wages; and (6) September 2, 2024 through November 24, 2024 ("Table 6"), which reflects his return to a full-time schedule with some week-to-week variation in his hours that resulted in less overtime pay,[9] four split shifts in most

---

[7] Contained in Mr. Parada Orellana's supplemental notice are individual timesheets that occasionally vary from the typical schedule that he testified to working. *See supra* note 1. Mr. Parada Orellana need only prove damages to a "reasonable certainty," *Boland*, 763 F. Supp. 2d at 68, and the court has concluded that his typical schedule accurately depicts the hours he worked unless noted otherwise.

[8] Mr. Parada Orellana worked approximately two split shifts per week during this period. *See* ECF No. 12-1, at 15.

[9] As noted, *see supra* p. 4, Mr. Parada Orellana worked (1) approximately fifty-eight hours during the week beginning September 2, 2024; (2) sixty-three-and-a-half hours during the week beginning September 9, 2024; (3) approximately sixty-one-and-a-half hours during the week beginning September 16, 2024; (4) approximately sixty hours during the week beginning September 30, 2024; (5) approximately sixty-five-and-a-half hours during the week beginning

(*continued on next page*)

weeks and variable split shifts in others,[10] and a $16.00 hourly wage when the District's minimum wage was $17.50 per hour. Finally, the court calculates the total unpaid wages and liquidated damages that Defendants owe ("Table 7"). The court concludes that Mr. Parada Orellana is entitled to $32,741.38 in unpaid wages and $98,224.13 in liquidated damages, for a total of $130,965.50, plus post-judgment interest. *See* 28 U.S.C. § 1961.

| Table 1: October 9, 2023 – February 11, 2024 and March 4, 2024 – May 5, 2024 | Hours | Rate | Sub-Total |
|---|---|---|---|
| Unpaid Regular Hours | 40 | $17.00 | $680 |
| Unpaid Overtime Hours | 47 | $25.50 | $1,198.50 |
| Unpaid Split Shifts | 4 | $17.00 | $68 |
| Weekly Wages Owed (*Unpaid Regular Hours + Unpaid Overtime Hours + Unpaid Split Shifts*) | | | $1,946.50 |
| Weekly Salary Paid by Defendants | | | $1,200 |
| Weekly Unpaid Wages (*Total Weekly Wages Owed - Weekly Salary Paid by Defendants*) | | | $746.50 |
| Number of Weeks During Period (*October 9, 2023 – February 11, 2024 and March 4, 2024 – May 5, 2024*) | | | 27 |
| Total Unpaid Wages (*Weekly Unpaid Wages x Number of Weeks During Period*) | | | $20,155.50 |
| Liquidated Damages (*3x Total Unpaid Wages*) | | | $60,466.50 |
| **Total (*Total Unpaid Wages + Liquidated Damages*)** | | | **$80,622** |

---

October 7, 2024; (6) approximately sixty-four-and-a-half hours during the week beginning October 21, 2024; (7) approximately seventy-one-and-a-half hours during the week beginning October 28, 2024; (8) fifty-seven hours during the week beginning November 4, 2024; and (9) thirty-and-a-half hours during the week beginning November 18, 2024. The total number of overtime hours for these weeks—calculated by subtracting forty hours from the total number of hours worked during weeks with overtime and adding those weekly subtotals—is 181.5 hours. For the remaining three weeks of this twelve-week period, Mr. Parada Orellana worked a typical eighty-seven-hour schedule, which includes forty-seven hours of overtime per week and 141 hours of total overtime. In total, Mr. Parada Orellana worked 322.5 hours of overtime from September 2, 2024 through November 24, 2024.

[10] Mr. Parada Orellana typically worked four split shifts per week when he was employed full-time. ECF No. 11-2 ¶ 8. He worked five split shifts in the four weeks starting September 16, 2024, ECF No. 12-1, at 20; October 7, 2024, *id.* at 22; October 28, 2024, *id.* at 24; and November 4, 2024, *id.* at 25, and only three split shifts in the week starting November 18, 2024, *id.* at 26—for a net total of three additional split shifts. The court will therefore add three additional split shift payments to the total amount that Defendants owe Mr. Parada Orellana. Because Mr. Parada Orellana's typical schedule would yield forty-eight shifts from September 2, 2024 through November 24, 2024, the court will calculate the amount owed for fifty-one total split shifts for this period.

15

| **Table 2: February 12, 2024 – March 3, 2024** | **Hours** | **Rate** | **Sub-Total** |
|---|---|---|---|
| Unpaid Regular Hours | 40 | $17.00 | $680 |
| Unpaid Overtime Hours | 47 | $25.50 | $1,198.50 |
| Unpaid Split Shifts | 4 | $17.00 | $68 |
| Weekly Wages Owed (*Unpaid Regular Hours + Unpaid Overtime Hours + Unpaid Split Shifts*) | | | $1,946.50 |
| Weekly Salary Paid by Defendants | | | $0 |
| Weekly Unpaid Wages (*Weekly Wages Owed - Weekly Salary Paid by Defendants*) | | | $1,946.50 |
| Number of Weeks During Period (*February 12, 2024 – March 3, 2024*) | | | 3 |
| Total Unpaid Wages (*Weekly Unpaid Wages x Number of Weeks During Period*) | | | $5,839.50 |
| Liquidated Damages (*3x Total Unpaid Wages*) | | | $17,518.50 |
| **Total (*Total Unpaid Wages + Liquidated Damages*)** | | | **$23,358** |

| **Table 3: May 6, 2024 – June 30, 2024** | **Hours** | **Rate** | **Sub-Total** |
|---|---|---|---|
| Regular Hours Wages Owed | 25 | $17.00 | $425 |
| Regular Hours Wages Paid | 25 | $16.00 | $400 |
| Weekly Unpaid Wages (*Regular Hours Wages Owed - Regular Hours Wages Paid*) | | | $25 |
| Number of Weeks During Period (*May 6, 2024 – June 30, 2024*) | | | 8 |
| Total Unpaid Wages (*Weekly Unpaid Wages x Number of Weeks During Period*) | | | $200 |
| Liquidated Damages (*3x Total Unpaid Wages*) | | | $600 |
| **Total (*Total Unpaid Wages + Liquidated Damages*)** | | | **$800** |

| **Table 4: July 1, 2024 – August 4, 2024 and August 26, 2024 – September 1, 2024** | **Hours** | **Rate** | **Sub-Total** |
|---|---|---|---|
| Regular Hours Wages Owed | 25 | $17.50 | $437.50 |
| Regular Hours Wages Paid | 25 | $16.00 | $400 |
| Weekly Unpaid Wages (*Regular Hours Wages Owed – Regular Hours Wages Paid*) | | | $37.50 |
| Number of Weeks During Period (*July 1, 2024 – August 4, 2024 and August 6, 2024 – September 1, 2024*) | | | 6 |
| Total Unpaid Wages (*Weekly Unpaid Wages x Number of Weeks During Period*) | | | $225 |
| Liquidated Damages (*3x Total Unpaid Wages*) | | | $675 |
| **Total (*Total Unpaid Wages + Liquidated Damages*)** | | | **$900** |

| **Table 5: August 5, 2024 – August 25, 2024** | **Hours** | **Rate** | **Sub-Total** |
|---|---|---|---|
| Weekly Unpaid Regular Hours | 25 | $17.50 | $437.50 |
| Weekly Unpaid Split Shifts | 2 | $17.50 | $35 |
| Weekly Wages Owed (*Weekly Unpaid Regular Hours + Weekly Unpaid Split Shifts*) | | | $472.50 |
| Number of Weeks During Period (*August 5, 2024 – August 25, 2024*) | | | 3 |
| Total Unpaid Wages (*Weekly Unpaid Wages x Number of Weeks During Period*) | | | $1,417.50 |
| Liquidated Damages (*3x Total Unpaid Wages*) | | | $4,252.50 |
| **Total (*Total Unpaid Wages + Liquidated Damages*)** | | | **$5,670** |

| Table 6: September 2, 2024 - November 24, 2024 | Hours | Rate | Sub-Total |
|---|---|---|---|
| Regular Hours Wages Owed (*September 2, 2024 – November 17, 2024*) | 40 | $17.50 | $700 |
| Regular Hours Wages Paid (*September 2, 2024 – November 17, 2024*) | 40 | $16.00 | $640 |
| Number of Weeks During Period (*September 2, 2024 – November 17, 2024*) | | | 11 |
| Unpaid Regular Hours Wages (*September 2, 2024 – November 17, 2024*) ((*Regular Hours Wages Owed – Regular Hours Wages Paid*) x Number of Weeks) | | | $660 |
| Regular Hours Wages Owed (*November 18, 2024 – November 24, 2024*) | 30.5 | $17.50 | $533.75 |
| Regular Hours Wages Paid (*November 18, 2024 – November 24, 2024*) | 30.5 | $16.00 | $488 |
| Unpaid Regular Hours Wages (*November 18, 2024 – November 24, 2024*) (*Regular Hours Wages Owed – Regular Hours Wages Paid*) | | | $45.75 |
| Total Unpaid Regular Hours Wages (September 2, 2024 – November 24, 2024) (Unpaid Regular Hours Wages (*September 2, 2024 – November 17, 2024*) + Unpaid Regular Hours Wages (*November 18, 2024 – November 24, 2024*)) | | | $705.75 |
| Total Overtime Hours Wages Owed[11] | 322.5 | $26.25 | $8,465.63 |
| Total Overtime Hours Wages Paid by Defendants | 322.5 | $16.00 | $5,160 |
| Total Unpaid Overtime Hours Wages (*Total Overtime Hours Wages Owed – Total Overtime Hours Wages Paid*) | | | $3,305.63 |
| Total Unpaid Split Shifts[12] | 51 | $17.50 | $892.50 |
| Total Unpaid Wages (*Total Unpaid Regular Hours Wages + Total Unpaid Overtime Hours Wages + Total Unpaid Split Shifts*) | | | $4,903.88 |
| Liquidated Damages (*3x Total Unpaid Wages*) | | | $14,711.63 |
| **Total (*Total Unpaid Wages + Liquidated Damages*)** | | | **$19,615.50** |

| Table 7: Total Unpaid Wages and Liquidated Damages | Unpaid Wages | Liquidated Damages | Sub-Total |
|---|---|---|---|
| October 9, 2023 – February 11, 2024 and March 4, 2024 – May 5, 2024 | $20,155.50 | $60,466.50 | $80,622 |
| February 12, 2024 – March 3, 2024 | $5,839.50 | $17,518.50 | $23,358 |
| May 6, 2024 – June 30, 2024 | $200 | $600 | $800 |
| July 1, 2024 – August 4, 2024 and August 26, 2024 – September 1, 2024 | $225 | $675 | $900 |
| August 5, 2024 – August 25, 2024 | $1,417.50 | $4,252.50 | $5,670 |
| September 2, 2024 – November 24, 2024 | $4,903.88 | $14,711.63 | $19,615.50 |
| **Total** | **$32,741.38** | **$98,224.13** | **$130,965.50** |

---

[11] *See supra* note 9.

[12] *See supra* note 10.

### 2.     Attorney's fees

The FLSA, DCMWA, and DCWPCL each authorize the award of reasonable attorney's fees and costs to prevailing plaintiffs.  29 U.S.C. § 216(b); D.C. Code § 32-1308(b)(1); D.C. Code § 32-531.12(e)(4).  Because the court will grant Mr. Parada Orellana a "default judgment against Defendants, [he] qualifies as a prevailing party entitled to attorney's fees and costs."  *Serrano v. Chicken-Out Inc.*, 209 F. Supp. 3d 179, 194 (D.D.C. 2016).  However, the court must still ensure that the requested fees are "reasonable."  29 U.S.C. § 216(b); D.C. Code § 32-1308(b)(1); D.C. Code § 32-531.12(d)(4).  Courts arrive at an "initial estimate of a reasonable attorney's fee . . . by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate."  *Blum v. Stenson*, 465 U.S. 886, 888 (1984).  "In the preparation of fee applications[,] it is insufficient to provide the District Court with very broad summaries of work done and hours logged."  *Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Liberty House Nursing Home of Jersey City, Inc.*, 232 F. Supp. 3d 69, 80 (D.D.C. 2017) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982) (per curiam)).

Mr. Parada Orellana's counsel provided a two-page affidavit in which he declares that—at the time he filed the default judgment motion—his firm had "spent 7.4 attorney hours and 5.5 support staff hours prosecuting this matter" and "incurred $180.70 in service expenses[] and $405.00 in filing fees."  ECF No. 11, at 5.  Such a "bare bones affidavit is not 'sufficiently detailed to permit the [court] to make an independent determination whether or not the hours claimed are justified.'"  *Liberty House Nursing Home of Jersey City*, 232 F. Supp. 3d at 80 (quoting *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327).  At the evidentiary hearing on Mr. Parada Orellana's motion, the court informed counsel that his affidavit was insufficient to support an award of attorney's fees.  Hr'g Tr. at 20:06-21:24.  Counsel responded that he may withdraw his request for

fees and costs because Harvard Liquor Store has since closed. *Id.* at 21:25-22:20. Accordingly, the court will deny the request for attorney's fees without prejudice to refiling within fourteen days of the entry of this order. Any renewed motion must include "a 'detailed summary' of the work performed by [Mr. Parada Orellana's] counsel 'based on contemporaneous time records indicating the work performed by each attorney for whom fees are sought.'" *Liberty House Nursing Home of Jersey City*, 232 F. Supp. 3d at 81 (quoting *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327).

## IV.    CONCLUSION

For the foregoing reasons, the court will grant Mr. Parada Orellana's motion for default judgment, ECF No. 11, as it concerns unpaid wages and liquidated damages, and deny the motion without prejudice to refiling within fourteen days as it concerns attorney's fees and costs. The court will enter a judgment against Defendants Hann's Harvard, Inc. and Doung Kyu Han, jointly and severally, in the amount of $32,741.38 in unpaid wages and $98,224.13 in liquidated damages, for a total of $130,965.50, plus post-judgment interest. A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   February 23, 2026